BARRY R. LAX (BL 1302)
TERENCE W. McCORMICK (TM 2713)
THE LAX LAW FIRM
470 Park Avenue South
10th Floor North
New York, NY 10016
(212) 696-1999

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
LYNN S. LAX,                                              :          **05 Civ. 8371 (PAC)**
                                                          :
                           Plaintiff,                     :          **COMPLAINT**
                                                          :
         v.                                               :          **JURY TRIAL**
                                                          :          **DEMANDED**
DAIWA SECURITIES AMERICA INC. and                         :
IKUO MORI,                                                :          **ECF CASE**
                                                          :
                           Defendants.                    :
-----------------------------------------------------------X

Plaintiff Lynn S. Lax, by her attorneys, The Lax Law Firm, alleges as follows:

## NATURE OF THE CASE

1.      This employment discrimination and equal rights lawsuit is brought against Defendants Daiwa Securities America Inc. ("Daiwa") and its Chairman and Chief Executive Officer, Ikuo Mori ("Mori," and together with Daiwa, "Defendants") under the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), the Equal Pay Act of 1963, 29 U.S.C. § 206(d), New York Labor Law §§190 *et seq*., the New York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq*. ("State HRL"), and the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101 *et seq*. ("City HRL").

2.      Plaintiff has filed this lawsuit because Daiwa has maintained a discriminatory workplace in which she encountered a glass ceiling, to wit, she was denied

promotion and compensation commensurate with men.  In addition, Plaintiff has suffered retaliation for complaining about Daiwa's unlawful employment practices.

3. Plaintiff was hired as a Vice President and second-in-charge of Daiwa's Human Resources department in March 1999.  During her tenure at Daiwa, Plaintiff competently performed not only her own duties as a senior generalist in the Human Resources department but also the full range of responsibilities associated with the position of Director, such that she was, in essence, a *de facto* Director of the department.

4. In or about April 2004, Plaintiff was promoted to First Vice President. Nevertheless, Plaintiff was denied compensation commensurate with similarly situated men, i.e., men who were second-in-charge of other comparable departments within Daiwa.

5. In October 2004, Plaintiff hit the glass ceiling at Daiwa.  Defendants wrongfully failed even to notify Plaintiff of their decision to terminate and replace the Director of the Human Resources department, a position above her in the corporate hierarchy, much less give her the opportunity to apply for the position, but instead interviewed outside Daiwa and hired a man who was less qualified than Plaintiff.

6. In October 2004, Plaintiff confronted Daiwa's co-President, Richard Beggs ("Beggs"), and protested that Defendants' refusal to promote her to the position of Senior Vice President and Director of Human Resources effectively limited Plaintiff's long-term opportunities at Daiwa and her compensation.  Indeed, Plaintiff was not even interviewed for the position, for which she was abundantly qualified.  On January 27, 2005, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission detailing this discriminatory act, along with the fact that she was not being

paid compensation commensurate with that paid to men holding comparable positions. Daiwa immediately began a campaign of retaliation against Plaintiff by, among other things, reducing her duties, responsibilities, and authority, suggesting to other members of her department that they should avoid her, and interfering with her ability to perform her job.  By August 2005, Daiwa's discriminatory conduct became so intolerable that Plaintiff was constructively discharged.

## THE PARTIES

7. Plaintiff is a 44 year-old woman and resides in Leonia, New Jersey.  She is a citizen of the United States.

8. Daiwa is a corporation with offices within this judicial district and elsewhere.  Daiwa is a securities firm headquartered in New York that engages in the sale and trading of Japanese and U.S. securities and investment banking activities.

9. Plaintiff was employed by Daiwa from March 1999 to August 2005.

10. At all times relevant to this action, Plaintiff worked in Daiwa's Human Resources department.

11. At all times relevant to this action, Daiwa has been an employer engaged in an industry affecting interstate commerce.

12. Daiwa currently employs more than two hundred (200) people.  At all times relevant to this action, Daiwa has employed in excess of fifteen employees in each calendar week in each of twenty (20) or more calendar weeks in the current or preceding year.

13. Daiwa meets the definition of "employer" under Title VII, the Equal Pay Act of 1963, the State HRL, and the City HRL.

14. At all times relevant to this action, Mori has been the Chairman and Chief Executive Officer of Daiwa.

## JURISDICTION

15. This Court has subject matter jurisdiction over Plaintiff's claims under Title VII and the Equal Pay Act pursuant to 28 U.S.C. §§ 1331 and 1343, because those claims arise under the laws of the United States and are brought to recover damages for deprivation of equal rights. This Court has supplemental subject matter jurisdiction over Plaintiff's claims under the New York Labor Law, the State HRL and the City HRL pursuant to 28 U.S.C. § 1367, because the state and city law claims arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

16. Plaintiff has complied fully with any and all prerequisites to jurisdiction in this Court under Title VII, the Equal Pay Act, the New York Labor Law, the State HRL and the City HRL.

## PROCEDURAL HISTORY

17. On January 27, 2005, Plaintiff filed a timely charge of discrimination against Daiwa with the Equal Employment Opportunity Commission ("EEOC"), complaining of the unlawful actions described herein (hereinafter, "the EEOC Charge").

18. On July 5, 2005, the EEOC issued a "right to sue" letter to Plaintiff pursuant to 29 C.F.R. § 1601.28(a)(2). (A copy of the "right to sue" letter is attached hereto as Exhibit "A").

19. Contemporaneously with the filing of this Complaint, Plaintiff has mailed a copy of this Complaint, along with a letter of explanation, to the New York City Commission of Human Rights and the Office of the Corporation Counsel of the City of New York, satisfying the notice requirements of Section 8-502 of the New York City Administrative Code.

## VENUE

20. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), (c) and 42 U.S.C. § 2000e-5(f)(3), because Daiwa has offices, conducts business, and can be found in this district, and the causes of action arose and the acts and omissions complained of occurred therein.

## PLAINTIFF'S EMPLOYMENT HISTORY AT DAIWA

Background

21. Plaintiff received a bachelor's degree in psychology from New York University in 1994.

22. In March 1999, Plaintiff began working at Daiwa as a Vice President in its Human Resources department.

23. Because of her exceptional performance, Plaintiff was promoted to First Vice President in or about April 2004.

24. Until October 2004, Plaintiff reported to the Director of Human Resources, Brad Brenner. During that period, Plaintiff and Mr. Brenner were effectively interchangeable; on a day-to-day basis, Human Resources personnel sought direction from Plaintiff as much as they did from Mr. Brenner in the performance of the Human Resources function, the design of new policies, procedures and programs, and interaction

with other departments at Daiwa. Plaintiff substantially performed all levels of recruitment and interviewing, and otherwise carried out all the functions and duties of the Director of Human Resources during the time when she reported to Mr. Brenner.

Defendants' Failure to Promote Plaintiff

25. On or about October 20, 2004, Plaintiff was advised by Daiwa's Co-President, Richard Beggs, that she should prepare a severance package agreement for Mr. Brenner, who was to be terminated the next day. During this conversation, Beggs informed Plaintiff that Daiwa had already hired a candidate from outside Daiwa, Gary Mass ("Mass"), to replace Mr. Brenner as the new Director of the Human Resources Department.

26. At no point did Defendants post the position of Director of Human Resources internally or otherwise advise Plaintiff that the position would become open before hiring Mass. Plaintiff was, moreover, completely unaware that the position had become vacant until Beggs told her that Daiwa had already hired Mass.

27. Plaintiff was eminently qualified for the position of Director of Human Resources, having over seventeen years of experience in the field of human resources management. Plaintiff was further qualified by the position by reason of her successful performance of her duties at Daiwa, as well as her performance of all the other duties that would be expected of the Director of Human Resources at Daiwa while she was employed there.

28. Plaintiff asked Beggs whether Defendants had even considered Plaintiff for the position. Beggs's response was "yes, but Mr. Mori is really looking for someone to spend 50% of **his** time with Mr. Mori as a condition of the job."

6

29.     Upon information and belief, Beggs's statement was a subterfuge, since Beggs and Mori had already determined not to promote Plaintiff even before they terminated Brenner.  Beggs was well aware that Plaintiff was fully qualified for the position and had been effectively running Human Resources for most if not all of her tenure.  The decision to hire a man to fill Brenner's position was driven by Defendants' bias against female employees and was fore-ordained well before the position became open.

30.     Mori had the ultimate power and authority to approve or veto all proposed personnel action at Daiwa affecting Plaintiff and similarly situated employees, including the hiring, promotion and/or compensation of Plaintiff.  Mori reviewed and approved (or disapproved, as the case may be) every decision to hire and or promote employees at Plaintiff's level, including the compensation decision.  Indeed, upon information and belief, it was Mori who ultimately decided that Plaintiff would not be promoted based upon her gender.

31.     Plaintiff protested to Beggs that Defendants' treatment of her was discriminatory and that as the result of their passing her over for promotion, she would never be able to be promoted to the next compensation level at Daiwa, Senior Vice President, or attain the position of Director.  Beggs informed Plaintiff that she would remain second-in-charge of the department, although she would continue to run the department as she had before.

32.     Mass was less qualified than Plaintiff for the position of Director of the Human Resources.  In fact, in the months after Mass joined Daiwa, he demonstrated ignorance of several critical aspects of his function.

Disparate Payment Based Upon Gender

33.     Plaintiff was also paid significantly less than other Vice Presidents at Daiwa who were second-in-charge of comparable non-revenue producing departments due to her gender.  For example, the second-in-charge of the Compliance Department and the second-in-charge of the Operations Department, both of whom are males, each received significantly higher total compensation packages than Plaintiff for the year ended March 31, 2004 (and, upon information and belief, for other years as well).  Both of these individuals have essentially the same responsibilities and the same experience in their respective fields as does Plaintiff.

34.     In addition to protesting Defendants' failure to promote her, Plaintiff also mentioned to Beggs Defendants' discriminatory treatment in the area of compensation.  Beggs demurred and told Plaintiff to take the matter up with Mass.  Shortly after Mass joined Daiwa, he acknowledged to Plaintiff that her compensation was not in line with the market and needed to be raised to a more equitable level.  As it turned out, Plaintiff's compensation was never made equal to that of her male counterparts.

35.     Upon information and belief, out of over 200 employees at Daiwa, there are no female department heads and only two female Senior Vice Presidents, one in the Legal Department and one in the Investment Banking Department.  Upon information and belief, Plaintiff was the only female First Vice President at Daiwa.

Daiwa's Retaliation Against Plaintiff

36.     On January 27, 2005, Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission, which was duly forwarded to Daiwa.  In

8

contravention of its policies, Daiwa failed to conduct an investigation of Plaintiff's complaints.

37. After Plaintiff filed her Charge of Discrimination, Daiwa dramatically reduced Plaintiff's responsibilities and excluded her from the flow of information. This campaign of isolation reached the point where Plaintiff had to request other Human Resources personnel to forward e-mail traffic to her. Astonishingly, Mass further stated to at least one other Human Resources employee that Beggs had discouraged him from communicating or working too closely with that employee because she was friendly with and worked closely with Plaintiff.

38. Not only did Daiwa ostracize Plaintiff, but it demeaned her by relegating her to the function of inputting data for Mass, who did not have adequate computer skills. Daiwa was sending an unmistakable message to Plaintiff and the personnel who worked with her that she was *persona non grata* and would simply not be allowed to function.

39. At the end of Daiwa's 2004 fiscal year, Plaintiff received the minimum salary increase for her position and no bonus. Every other employee of the Human Resources department received a bonus. Indeed, Mass was awarded a bonus of $60,000 after being employed by Daiwa for less than half a year. Defendants further retaliated against Plaintiff by describing her year-end review as "pending," a classification it did not use with regard to other employees and that it had not previously used with regard to Plaintiff.

40. Following Daiwa's persistent failure to accord Plaintiff equal treatment with her male counterparts, as well as its campaign of isolation and other intolerable treatment, Plaintiff was constructively discharged on or about August 18, 2005.

41. As a result of Daiwa's discrimination and retaliation, Plaintiff has suffered substantial loss of income and employment-related benefits, as well as emotional distress and humiliation. Since 1999, Daiwa has paid Plaintiff less than it would have paid her if she had not been subjected to gender discrimination and retaliation.

42. Defendants' reasons for engaging in the conduct complained of were neither legitimate nor nondiscriminatory.

**AS AND FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**(Against Defendant Daiwa Securities America Inc.)**

43. The allegations in the foregoing paragraphs are repeated and realleged as if fully set forth herein.

44. Daiwa has intentionally discriminated and retaliated against Plaintiff by, among other things:

   a. denying her promotional opportunities because of her gender;

   b. providing her with less favorable compensation and other terms and conditions of employment because of her gender; and

   c. constructively terminating her employment through the calculated and intentional creation of intolerable working conditions solely in response to her gender and protected anti-discrimination activities.

45. In addition to the direct evidence of unlawful gender-based discrimination referred to above, Plaintiff is a member of a protected class under Title VII who satisfactorily performed the duties required of her position. Plaintiff was further qualified for the position of Director of Human Resources. Daiwa's adverse treatment of Plaintiff in (i) its failure to promote Plaintiff, (ii) disparate pay and (iii) the retaliation against and

10

ultimate constructive discharge of Plaintiff all occurred under circumstances giving rise to a strong inference of employment discrimination on the basis of Plaintiff's sex.

46. The aforementioned conduct by Daiwa constitutes a malicious, willful, and reckless violation of Plaintiff's rights under Title VII, 42 U.S.C. §§2000e, *et seq.*, as the result of which Plaintiff seeks, in addition to the other damages sought herein, punitive damages in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
## VIOLATION OF THE EQUAL PAY ACT OF 1963
## (Against Defendants Daiwa Securities America Inc. and Ikuo Mori)

47. The allegations in the foregoing paragraphs are repeated and realleged as if fully set forth herein.

48. By the conduct alleged above, Defendants have discriminated against Plaintiff by failing to provide compensation equal to that given to men who perform substantially equal responsibilities, in violation of the Equal Pay Act, 29 U.S.C. §§206(d), 215.

49. As a result of the foregoing unlawful discriminatory practices, Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION
## VIOLATION OF THE NEW YORK LABOR LAW
## (Against Defendant Daiwa Securities America Inc.)

50. The allegations in the foregoing paragraphs are repeated and realleged as if fully set forth herein.

51. Pursuant to Section 194 of the New York Labor Law, Daiwa is prohibited from compensating female employees at a rate less than is paid to male employees for

equal work, the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions.

52. By the conduct alleged above, Daiwa, through its corporate officers and employees, has knowingly and willfully discriminated against Plaintiff by failing to provide compensation equal to that given to men who perform substantially equal responsibilities.

53. As a result of the foregoing unlawful discriminatory practices, Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

**AS AND FOR A FOURTH CAUSE OF ACTION
DISCRIMINATORY EMPLOYMENT PRACTICES
UNDER THE NEW YORK STATE HRL
(Against Defendants Daiwa Securities America Inc. and Ikuo Mori)**

54. The allegations in the foregoing paragraphs are repeated and realleged as if fully set forth herein.

55. Pursuant to Section 296(1) of the Executive Law, it is an unlawful discriminatory practice for an employer, because of the sex of any individual, to discriminate against any such individual in compensation or in terms, conditions or privileges of employment.

56. Defendants Daiwa and Mori have engaged in an unlawful discriminatory practice under Section 296(1) of the State Human Rights Law by failing to promote Plaintiff and by compensating her on unequal terms with similarly situated male employees.

57. Alternatively, Mori aided and abetted Daiwa's discrimination against Plaintiff.

58. As a result of the foregoing unlawful discriminatory practices, Plaintiff has suffered and will continue to suffer damages in an amount to be determined.

## AS AND FOR A FIFTH CAUSE OF ACTION
## VIOLATION OF THE ANTI-RETALIATION PROVISIONS
## OF THE NEW YORK STATE HRL
### (Against Defendants Daiwa Securities America Inc. and Ikuo Mori)

59. The allegations in the foregoing paragraphs are repeated and realleged as if fully set forth herein.

60. Pursuant to Section 296(7) of the Executive Law, it is an unlawful discriminatory practice for any person engaged in any activity to which this section applies, to retaliate or discriminate against any person because she has opposed any practices forbidden under the State HRL or because she has filed a complaint, testified or assisted in any proceeding under the State HRL.

61. Defendants Daiwa and Mori have engaged in unlawful discriminatory practices under Section 296(7) of the State HRL by creating a hostile and intimidating atmosphere and engaging in a pattern of isolation and intimidation subsequent to the time that Plaintiff brought this matter to Defendants' attention.

62. Alternatively, Mori aided and abetted Daiwa's discrimination against Plaintiff.

63. As a result of the foregoing unlawful discriminatory practices, Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
## VIOLATIONS OF THE NEW YORK CITY HRL
## (Against Defendants Daiwa Securities America Inc. and Ikuo Mori)

64. The allegations in the foregoing paragraphs are repeated and realleged as if fully set forth herein.

65. Pursuant to Chapters 1 through 7 of Title 8 of the Administrative Code of the City of New York, §§ 8-101 *et seq.*, it is an unlawful discriminatory practice for any person, because of the sex of any individual, to discriminate against any such individual in compensation or in terms, conditions or privileges of employment, or to retaliate or discriminate against any person because she has opposed any practice forbidden under the City HRL or because she has filed a complaint, testified or assisted in any proceeding under City HRL.

66. The aforementioned conduct by Defendants Daiwa and Mori constitutes a malicious, willful, and reckless violation of the City HRL, as the result of which Plaintiff seeks, in addition to the other damages sought herein, punitive damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment as follows:

   a. Declaring that Daiwa's actions, policies, and practices have breached the duties, responsibilities and obligations imposed upon it by Title VII, the Equal Pay Act, the New York Labor Law, the State HRL, and the City HRL, and have violated Plaintiff's rights thereunder;

   b. Permanently enjoining Daiwa (and its officers, agents, and successors) from engaging in the actions, policies, or practices that discriminate

    against Daiwa employees because of their gender or that discriminate or retaliate against any employee because of his or her participation in this lawsuit, in Plaintiff's opposition to discrimination by Daiwa, or in any other conduct protected by Title VII, the Equal Pay Act, the New York Labor Law, the State HRL, or the City HRL;

c. Ordering appropriate equitable relief to prevent, correct, and remedy past and future discrimination against female professional employees at Daiwa and to prevent, correct, and remedy past and future discrimination or retaliation against all Daiwa personnel who engage in conduct protected by Title VII, the Equal Pay Act, the New York Labor Law, the State HRL, or the City HRL;

d. Directing Daiwa to make Plaintiff whole by providing her with back pay, front pay, and compensation for all lost or diminished employment-related compensation or benefits, past or future;

e. Directing Daiwa to pay Plaintiff compensatory damages for injury to her reputation, for adverse effects on her career, diminished earning capacity resulting from the discriminatory and retaliatory actions of Daiwa and emotional distress;

g. Awarding Plaintiff reasonable attorneys' fees and costs, as provided by Title VII, 42 U.S.C. § 1988, Section 216 of the Equal Pay Act of 1963, Section 198 of the New York Labor Law, and the City HRL;

h. On the First and Sixth Causes of Action (Title VII and the City HRL), punitive damages in an amount to be determined at trial;

    i. On the Third Cause of Action (NY Labor Law), in addition to the damages awarded for unequal compensation, liquidated damages in an additional amount equal to twenty-five percent of such damages pursuant to Section 198;

    j. Awarding Plaintiff prejudgment interest on all monies awarded to her; and

    k. Granting such additional relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: New York, New York
       September 29, 2005

**THE LAX LAW FIRM**

/s/ Terence W. McCormick
Barry R. Lax, Esq. (BL 1302)
Terence W. McCormick, Esq. (TM 2713)
470 Park Avenue South
10th Floor
New York, NY 10016
Tel: (212) 696-1999
*Attorneys for Plaintiff*
*Lynn S. Lax*

**EXHIBIT "A"**
("Right to Sue" Letter)



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
Phone: (212) 336-3620
General Fax: (212) 336-3625
TTY: (212) 336-3622

Spencer H. Lewis, Jr.
District Director
33 Whitehall Street, 5th Floor
New York, NY 10004-2112

Barry R. Lax, Esq.
The Lax Law Firm
470 Park Avenue South
Tenth Floor
New York, NY 10016

Re: Lynn Lax v. Daiwa Securities America Inc.
Charge No. 160-02005-00875

Dear Mr. Lax:

This office is in receipt of your request for a Notice of Right to Sue on the above-referenced charge.

Ordinarily, a charging party or his/her counsel is not entitled to receive a Notice of Right to Sue upon request until the charge has been pending with the EEOC for at least 180 days. However, an early Notice of Right to Sue is authorized by 29C.F.R. § 1601.28(a)(2) if the Director determines that the Commission will not be able to complete its administrative process within 180 days of the date the charge was filed.

We have reviewed all of the circumstances of this case and have determined that our issuing you the requested Notice of Right to Sue is warranted at this time. We have concluded that the EEOC will be unable to complete the processing of this charge within 180 days of the date the charge was filed.

Enclosed is your Notice of Right to Sue.

Sincerely,

JUL 0 5 2005
_____
Date

_____
Spencer H. Lewis, Jr.
District Director

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: Ms. Lynn Lax
317 Magnolia Place
Leonia, New Jersey 07605

From:
Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 160-2005-00875 | Legal Unit | (212) 336-3721 |

*(See also the additional information attached to this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[x] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[x] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Spencer H. Lewis, Jr., District Director

JUL 0 5 2005
*(Date Mailed)*

Enclosure(s)

cc: Respondent: Daiwa Securities America Inc.